**Todd A. HEATH–HAZLETT**

**v.**

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 24, 2002.

Decided Aug. 26, 2002.

Marc A. Werlinsky and Timothy P. Wile, Asst. Counsel In–Charge, King of Prussia, for appellant.

No appearance entered on behalf of appellee.

Before COLINS, President Judge, COHN, Judge, and MIRARCHI, Jr., Senior Judge.

Opinion by Judge COHN.

The Department of Transportation, Bureau of Driver Licensing (Bureau) appeals from an October 5, 2000 order of the Court of Common Pleas of Allegheny County that sustained Todd A. Heath Hazlett's (Heath–Hazlett) appeal from a two-year revocation of his operating privileges. We reverse the order of the trial court.

By letter dated April 4, 2000, the Bureau notified Heath Hazlett that his driving privileges would be revoked for a period of two years, effective March 6, 2005,[1] because of his conviction on March 27, 2000, for an October 11, 1999 violation of Section 1543(c)(2) of the Vehicle Code (Code), 75 Pa.C.S. § 1543. Section 1543(c) provides that a licensee who drives while his operating privilege is suspended is subject to an additional one-year suspension, and a licensee who drives while his operating privilege is revoked is subject to an additional two-year revocation.[2] *O'Connor*

---

1. This revocation would not go into effect until March 6, 2005, because Heath–Hazlett had prior convictions on his driving record and the consecutive revocations for those convictions were not scheduled to end until March 6, 2005.

2. Section 1543, entitled **"Driving while operating privilege is suspended or revoked,"** states in pertinent part:

   (a) **Offense defined.**—Except as provided in subsection (b), any person who drives a motor vehicle on any highway or trafficway of this Commonwealth after the commencement of a suspension, revocation or cancellation of the operating privilege and before the operating privilege has been restored is guilty of a summary offense and shall, upon conviction, be sentenced to pay a fine of $200.

   (b) **Certain offenses.**—
   (1) Any person who drives a motor vehicle on any highway or trafficway of this Commonwealth at a time when their operating privilege is suspended or revoked as a condition of acceptance of Accelerated Rehabilitative Disposition for a violation of section 3731 (relating to driving under influence of alcohol or controlled substance) or because of a violation of section 1547(b)(1) (relating to suspension for refusal) or 3731 or suspended under section 1581 (relating to Driver License Compact) for an offense substantially similar to a violation of section 3731 shall, upon conviction, be guilty of a summary offense and shall be sentenced to pay a fine of $1,000 and to undergo imprisonment for a period of not less than 90 days.

*v. Department of Transportation, Bureau of Driver Licensing,* 755 A.2d 98 (Pa. Cmwlth.2000). Heath–Hazlett filed a timely statutory appeal of his revocation to the trial court.

A hearing *de novo* was held before the trial court on October 5, 2000. At that time, the court accepted into evidence a packet of documents certified by the Bureau[3] containing, *inter alia,* a report documenting Heath–Hazlett's considerable history of Vehicle Code violations.[4] Pertinent to the case *sub judice,* the report showed that Heath–Hazlett had been convicted on July 14, 1992 and again on October 31, 1992, of two Section 1543 driving offenses. Because Heath Hazlett's driving privileges were suspended at the time, he was given an additional one-year suspension for each offense, effective February 4, 1994 and February 4, 1995, subject to the provisions of Section 1543(c)(1). Thereafter, on July 30, 1993, Heath–Hazlett was convicted of another Section 1543 offense, and was designated a "habitual offender" pursuant to the definition in Section 1542(a).[5] Fur-

(2) This subsection shall apply to any person against whom one of these suspensions has been imposed whether the person is currently serving this suspension or whether the effective date of suspension has been deferred under any of the provisions of section 1544 (relating to additional period of revocation or suspension). This provision shall also apply until the person has had the operating privilege restored. This subsection shall also apply to any revocation imposed pursuant to section 1542 (relating to revocation of habitual offender's license) if any of the enumerated offenses was for a violation of section 3731 or for an out-of-State offense that is substantially similar to a violation of section 3731 for which a revocation is imposed under section 1581 (relating to Driver License Compact).

(c) **Suspension or revocation of operating privilege.**—Upon receiving a certified record of the conviction of any person under this section, the department shall suspend or revoke that person's operating privilege as follows:

(1) If the department's records show that the person was under suspension, recall or cancellation on the date of violation, and had not been restored, the department shall suspend the person's operating privilege for an additional one-year period.

(2) If the department's records show that the person was under revocation on the date of violation, and had not been restored, the department shall revoke the person's operating privilege for an additional two-year period.

\* \* \*

3. *See* 42 Pa.C.S. §§ 6103(a) (proof of official records) and 6109 (photographic copies of business and public records).

4. Between February 1986 and May 11, 2000, the date the certified driving history report was produced by the Bureau, Heath–Hazlett was convicted of numerous violations of the Motor Vehicle Code, including violations of Section 3323 (stop sign and yield sign violation), 75 Pa.C.S. § 3323; Section 3362 (exceeding maximum speed limits), 75 Pa.C.S. § 3362; Section 3112 (red light violation), 75 Pa.C.S. § 3112; Section 1533 (failure to respond), 75 Pa.C.S. § 1533; and Section 1543 (driving while under suspension or revocation), 75 Pa.C.S. § 1543.

5. *In 1993,* Section 1542, entitled "**Revocation of habitual offender's license**" stated in pertinent part:

(a) **General Rule.** The department shall revoke the operating privilege of any person found to be a habitual offender pursuant to the provisions of this section. A "habitual offender" shall be any person whose driving record, as maintained in the department, shows that such person has accumulated the requisite number of convictions for the separate and distinct offenses described and enumerated in subsection (b) committed after the effective date of this title and within any period of five years thereafter.

(b) **Offenses enumerated.**—Three convictions arising from separate acts of any one or more of the following offenses committed either singularly or in combination by any person shall result in such

ther, his driving privileges were *revoked* for five years, effective February 19, 1996, pursuant to Sections 1542(b)(1) and (d).

Following this, Heath–Hazlett was convicted of Section 1543 offenses on both April 27, 1994 and July 29, 1998. His license was revoked for another two years for each offense, pursuant to Sections 1542(e) and 1543(c)(2), effective February 19, 2001 and March 6, 2003. The cumulative effect of Heath–Hazlett's numerous convictions during this time period was the continued revocation of his driving privileges from February 19, 1996 until March 6, 2005.

At the hearing, however, Heath–Hazlett's counsel argued that, at the time of his October 11, 1999 violation, Heath Hazlett had been removed from "habitual offender" status pursuant to Legislative Act 143,[6] and, therefore, his operating privileges should be considered suspended and not revoked. Essentially, Act 143 eliminated certain driving offenses, including those noted in Section 1543, from the Section 1532 habitual offender "counters." The language of Act 143, as it applies to habitual offender status, provides as follows:

> person being designated as a habitual offender:
> (1) *Any offense set forth in section 1532* (relating to revocation or suspension of operating privilege).
> * * *
> (d) **Period of revocation.**—The operating privilege of any person found to be a habitual offender under the provisions of this section shall be revoked by the department for a period of five years.
> (e) **Additional offenses.**—Any additional offense committed within a period of five years shall result in a revocation for an additional period of two years.
> (Emphasis added.)

*In 1993,* Section 1532(b)(2) stated:
> The department shall suspend the operating privilege of any driver for six months upon receiving a certified record of the driver's

For drivers who were designated as habitual offenders prior to the effective date of this amendatory act and who would no longer be designated as habitual offenders under the provisions of this act, the department may remove these drivers from habitual offender status and require only that they complete the other sanctions associated with those convictions. ***Such persons may petition the department for removal from habitual offender status and, if they are eligible for removal, shall no longer be designated as habitual offenders.***[7]

Act 143, Section 4(b) (emphasis added). Heath–Hazlett's counsel claimed that his client's operating privileges should have been *suspended* for one year pursuant to Section 1543(c)(1), 75 Pa.C.S. § 1543(c)(1), and not revoked for two years as requested by the Bureau. The trial court, relying on this Court's holding in *O'Connor,* agreed with Heath Hazlett and sustained the appeal, modifying the two-year revocation under Section 1543(c)(2) to a one-year suspension under Section 1543(c)(1). Thereafter, the Bureau initiated this appeal.

> conviction of a subsequent offense under the following provisions:
> * * *
> Section 1543 (relating to driving while operating privilege is suspended or revoked).
> (Emphasis added.)

6. Act of December 12, 1994, P.L. 1048 (Act 143).

7. After removing a licensee from habitual offender status, the Bureau may only require the licensee to complete the *other sanctions* associated with prior convictions. *O'Connor.* In other words, Act 143 required conversion of a Section 1542 revocation into a one-year suspension *for driving while suspended,* and into a two-year revocation *for driving while revoked.*

In cases involving a suspension or revocation under Section 1543, the Bureau bears the burden of establishing that, at the time of the violation, the driver's operating privilege was, in fact, suspended or revoked. *Drudy v. Department of Transportation, Bureau of Driver Licensing*, 795 A.2d 508 (Pa.Cmwlth.2002). Our standard of review is limited to determining whether the trial court's findings are supported by competent evidence and whether it committed an error of law or abuse of discretion. *Id.* at 510 n. 5.

Contrary to counsel's argument, Act 143 does not automatically remove Heath–Hazlett from habitual offender status. Instead, the Act gives persons who desire to be removed the ability to petition the Bureau for their change of status, and allows the Bureau to remove them from habitual offender status. For example, in *O'Connor*, the case relied on by the trial court, the motorist had requested removal from habitual offender status, the Bureau complied and removed him. However, in this case, unlike *O'Connor*, Heath–Hazlett did not apply for removal from habitual offender status and was not removed until May 8, 2000.

This Court recently dealt with the same statutory provisions as in the case *sub judice*. In *Drudy*, we discussed at length the amendatory history of Section 1543 and stated:

> From the 1994 amendments, it is apparent that the legislature acted with the intent of requiring an additional two-year revocation of an individual's operating privilege where that individual had his operating privilege revoked and, prior to restoration of his operating privilege, was subsequently cited for violating Section 1543 (Driving while operating privilege is suspended or revoked should be subject to an additional two-year revocation).... Thus, on the date of the relevant violation ... Drudy's operating privilege had not been restored ... and, for purposes of Section 1543(c), it would still be considered "revoked." DOT met its burden of establishing that Drudy's operating privilege was revoked when it presented evidence of Drudy's prior revocation and lack of restoration prior to Drudy's ... violation. Therefore, the trial court erred when it reduced Drudy's two-year revocation to a one-year suspension.

*Drudy*, 795 A.2d at 513.

*Drudy* concerned the same issue as we have here. In that case the Bureau argued, as it does here, that because Drudy's operating privilege had been revoked and not restored until after his Section 1543(b) violation, his operating privilege should have been treated as revoked for purposes of applying Section 1543(c)(2) (and imposing the additional 2 year revocation). The Court in *Drudy* agreed. Further, regarding the question of whether Act 143 operated to automatically remove someone from habitual offender status, the same argument Heath Hazlett makes here, Judge Doyle wrote:

> Drudy's attorney's bald assertion, and the trial court's reliance thereon, that Act 143 automatically removed Drudy from habitual offender status is palpably incorrect. Act 143 does not operate to automatically remove a driver from habitual offender status or to automatically transform certain revocations into suspensions.

*Drudy*, 795 A.2d at 511 n. 7.

In the case *sub judice*, Heath–Hazlett was cited on October 11, 1999, and convicted on March 27, 2000, for the Section 1543 violation at issue in this case. The Bureau removed Heath–Hazlett from habitual offender status on May 8, 2000. Thus, at the time of Heath–Hazlett's October, 1999

Section 1543 violation, his operating privilege had not been restored and was still considered revoked. Therefore, we hold, consistent with the reasoning espoused in *Drudy*, that the trial court erred in modifying the additional two-year revocation imposed under Section 1543(c)(2). Accordingly, we reverse.

## ORDER

NOW, August 26, 2002, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is hereby reversed.